Good morning, Your Honors. May it please the Court, Katherine Miller on behalf of the appellants Lourdes Navarro and Universal Placement. Okay, are you going to split time or do you do the whole argument? I'm doing the whole argument. Thank you, Your Honor. But I do hope I watch the clock so I can reserve some time. Okay. You know, there are so many issues going through the record from the trial court. And so I hope that I can encapsulate some of them and maybe repackage them. There are some issues that I think are particular that I would like to point out, always beginning with subject matter jurisdiction. Never waived. And time and time again in this case, we see through all of the pleadings, through all of the motion for class certification, through argument at trial, through jury instructions, the statements were made by the plaintiffs that the fees that were charged for the visa processing and the associated fees with the visa application were, quote, illegal fees. That question right there is to be presented first and foremost to the Department of Labor. Well, you know, I think I want to move us along on that one because I just don't agree with you. And the reason I don't agree with you is that there's unquestionably federal question jurisdiction unless it has somehow been preempted or superseded by the statute related to the H-1B visas. And that statute says nothing in this subsection shall be construed as superseding or preempting any other enforcement-related authority under this chapter or any other act. So I read the other jurisdictions, including federal question jurisdiction, as remaining. I agree. There was no decision that it was an illegal, that those fees were illegal. And yet there was the presentation that it was illegal. And so that determination were those fees illegal or not was never made. And that is something that the Department of Labor is set up to investigate. But it does not deprive the district court of jurisdiction because of the section I just read you. Thank you, Your Honors. That segues into another issue on appeal, which is the fact that the Department of Labor was approached by the teachers, many of the teachers who were in this class. They did investigate. They investigated against the appellants. No determination of wrongdoing made. They did investigate as against the school districts. And rather than prosecute those or take those all the way to an adjudicatory decision, there was a voluntary settlement. And those school districts agreed to reimburse or to pay fees. Jump forward. We're at trial. We're at the time of having the judgment entered. And there's no credit given. And, in fact, there's a duplication once again under the argument that those fees were illegal. To me, that seems... I thought the trial judge addressed that at the end of the trial in terms of obtaining from these various class members their representation that they wouldn't follow through on any other reimbursement for these claims. Well, actually, there was the discussion about whether each class member would have to submit a statement under penalty of perjury, an affidavit, as to what other fees or amounts they had collected from other sources that they thought might be applicable to this judgment. I don't know how that's administered. I've not seen anything that is administered. I've looked at the court docket sheet. I don't see a single declaration submitted by any of the class members. Well, maybe they're waiting for this appeal to be resolved. Well, they are out collecting on the judgment. So it would seem that... If they are, and if they then come to this court seeking to collect on this judgment, they're going to have to, under the terms of the court's order, they're going to have to submit an affidavit saying that they've either not gotten anything or they've only gotten X amount and Y amount remains to be paid. As I read that order, I agree with Judge Christensen. The district judge understands the problem, and he put something in the order to ensure against double recovery. If I may, I have reviewed the district court's docket sheet. There is, I find, do not find a single affidavit from any of the class members. However, what I do find is that they are in this court, in this judgment, out there collecting, and specifically they have received an order and have foreclosed on the appellate's house. Yeah, but the trial court's intent is clear in terms of what has been ordered here, and it strikes me that this is just simply a post-resolution of this appeal administrative matter that the trial court's going to have to sort out on a class-member-by-class-member basis. Housekeeping, as we would call it. Your Honors, it's not happening. And how that housekeeping, there's no mechanism in place for that housekeeping to occur. There's no way to examine the veracity if there is a certification. It's subjective on the part of the class members whether or not they think that they've collected elsewhere and they have the rights from the Department of Labor, they have the rights in Louisiana, they have the rights in the Philippines. Whether or not they think any of those are applicable against this judgment, there's no check and balance on that. Yeah, but what is to prevent you? So here's what I understand that the district judge ordered. He requires that each class claimant, before they receive any recovery in the action, submit an affidavit attesting that he or she had not received and would not pursue compensation as part of the other actions. And then there was an amended judgment that provides that any payment received by a class member will partially satisfy the judgment in this case, and orders class members to acknowledge to the court receipt of such payment and partial satisfaction of the judgment. This is something that the court can do, and if you don't think it's being done, you can go to the court and require that these things be done, that these affidavits be filed, that the court has ordered be filed. Thank you, Your Honor. And the record shows that it has not been done, and yet they are out front. Okay. All right. It hasn't been done to this point in time. You have a remedy. You have a remedy before the district court to get that straightened out, I think. May I turn and address some other aspects of what is troubling, I believe, I would submit, with the way this case proceeded. Those include that the second amended complaint, which was the operative pleading that went to trial, did not plead that Lourdes Navarro would be individually or seek to hold her individually liable. There was no pleading of an alter ego theory against her for her company. The evidence was not put on. The jury was not instructed that way. The special verdict did not ask, for example, whether she should be held or found individually liable on the unfair business practices claim. There was no damages awarded under that claim. And the UCL claim was only against the company. We got a so-called advisory verdict on that. The judgment, however, holds her individually liable and is judgment against her. But not under the unfair competition law. An examination, I will submit, an examination of that amended judgment does show that she also is held, that the judgment is entered against her personally under the unlawful competition law, the UCL law. I'm not sure that's right. The judgment is entered against her under that so-called CEAA. Yes. Which is a different statute. I understand that. And I know that it's lengthy and it becomes interconnected. And I have the record at the desk and I can look that up. But I was surprised. And it's one thing that I think merits correction for her. Didn't the judge, I'm looking here in my documents in this case, didn't the judge instruct the jury on the alter ego principle theory? Weren't instructions provided on this? There were instructions provided on agency and I would have to double check on alter ego. The alter ego that was pleaded and tried was universal placement and PARs, that they were the alter ego. It was not the individual in the corporation. And there was no motion to conform evidence or to conform the pleading to the evidence. So the only thing that the jury was presented was whether PARs and UPI were alter egos. And so on many levels, the fact that Navarro was found individually liable is problematic. There's not an alter ego theory that's been, as against her, that's been pleaded and tried. There's not, she's not found liable on the tort, if you will, of the UCL. She is found liable on negligent misrepresentation. That, we submit, should not have been class certified. She is also found liable under the CEAA, but that is a contract claim, and the mere fact that she's an officer of the corporation does not give, the law does not support that she can be found individually liable on a contract claim, on the mere fact that she's an officer of the corporation. So in addition, you know, there are some other issues with the CEAA claim. But so we've got these pieces that wove together at the trial, pleading, class certification, evidence, jury instructions, you know, the whole process. But the pieces all do not fit together. And so we've got this continuation of a due process problem that we submit began with the motions for class certification. So going back to the, for example, the items with the damages award, at class certification the plaintiff submitted that damages would have to be calculated on an individual basis. They submitted that there were common questions. In fact, we disagree, but that even so, damages would have to be calculated one by one. When it came time to enter the judgment, that wasn't done. It was just a, the record doesn't reveal how it was that the damages were calculated. But in cases like this, it's fairly common for the total judgment amount to be calculated based on an average and then aggregation, but when the individual class members come in seeking money, they're going to have to prove it up individually. I mean, that's normal procedure. I understand, but we have this representation that the plaintiffs made to the court saying, we admit that there's not a common question of what the damages are. And it's going to have to be dealt with after trial. Each one has to prove their own damages. I guess I'll wait for them to say what they did or didn't admit. The other, one of the other aspects about, a couple of the other aspects about the class certification is going to the negligence misrepresentation claim and tying that into the question of whether Lulu Navarro can be held properly under this case as having the judgment entered against her personally. What they said was a misrepresentation with the class motion is completely different than what they said the misrepresentation was at trial. And so there was not this common question of fact. Did you then make a motion for decertification? The motion was not. When the evidence comes in different from what had been represented? The motion was not made. We were not trial counsel, but I don't find in the record that that motion was made. But the motion was made on the grounds that she didn't tell people in advance what all the fees were that they were going to have to pay. Then when it comes time to oral argument on the motion, the misrepresentation is that they entered into contracts, but she didn't keep the terms of the contract. So, for example, the contract said that they don't pay their placement fee until later in time, but she required them to pay it before they left the Philippines. Then the misrepresentation at trial is that she didn't disclose to them what her profits were going to be off of the fees that they paid. So it's this moving target. I would submit certainly a lack of due process. She doesn't know. She's informed one thing as notice of what she has to defend against, but it keeps on changing. Even so, you don't have this overriding common question of fact, but you've got this, you know, it almost seems as if it's just a matter of convenience as the case unfolds as to. And are you arguing then that the judge, Sue Esponte, should have decertified the class with respect to the negligent misrepresentation? Well, what we're arguing is that the class should not have been certified. Yeah, but that's different from the argument you're making because you're saying the evidence that was advanced or proffered with respect to the initial certification was one thing. But then when trial comes along, the evidence is different. So are you arguing that it's the difference in the evidence that is the problem, or are you arguing that the evidence in the first place was insufficient for the certification? We're arguing multiple strands. So one is the evidence was not sufficient in the first place for certification. We're talking about the negligent misrepresentation. We also argue the same with respect to the trafficking and the prejudice at trial with all of that evidence that came in. Yeah, so let me ask you about this one, both as to negligent misrepresentation and as to the trafficking. Obviously, the jury comes in for the defendants on the trafficking claims. So in one sense, this certification issue becomes moot. And the only thing you've got to argue as to why it's not moot is about one paragraph in your brief in which you say that because that was a trial, all kinds of damaging evidence comes in. And you list the categories of damaging evidence, but it struck me as pretty much all of that evidence would have been relevant to other causes of action that remained properly in the case. Can you respond to that? Yes, thank you, Your Honor. So for example, whether or not someone's husband has left them, or whether or not someone is stressed because of having children with some kind of disabilities or needing some kind of special care, or whether or not someone had asked a family member to help them getting the funds to come to the United States, whether or not someone felt stressed by those or overstressed by them so that they were, or maybe felt coerced that they had to go through with the process, those, that kind of testimony does not address whether or not the plaintiff, or excuse me, the defendants were offering employment services in California and should have had a more descriptive written statement of what the fees were going to be before contracts were entered into it. Yeah, although that evidence strikes me as at least potentially relevant with respect to the reliance under the negligence cause of action. And reliance being so individual, that again is one reason why the certification was erroneous, because... That's what I understood to be your primary argument here, is that an element of negligent misrepresentation is reliance that is an individual consideration.  That is one of the strands, and it is an important strand that I don't want to lose track of. I also want to footnote that this trial was, I think, about eight days long. You know, the bulk of the pleadings, over 100 pages of it, the bulk of the motion for class certification, all had to do with the trafficking. Then we go fast forward to the end when they're seeking attorney's fees, and the bulk of the work was for something that they did not prevail on, and yet they got more than an attorney's fees for that prevailing on the California Employment Services Act, I would submit. So you do end up having all of these pieces that weave together, that cumulatively, or you can say, you know, some jump out as being more important, you know, scream out that there was a miscarriage of justice, that there needs to be reversal, and the case handled correctly beginning at that point in time with the class certification. Before your time runs on you, I've got a question with respect to your contention that the negligent misrepresentation part of the class action was improperly certified. Yes. The recovery under that looks to be entirely subsumed in the items for recovery under the CEAA. Isn't that right? Under the CEAA, for example, they were given, as I understand it, money that they paid PARs. There was no pleading or proof. I'll cut to the chase. As I look at the jury verdict form, they award damages under the CEAA, and they go down a column of this is damages for this or this or that, and the yes, no, yes, no. And they award damages under negligent misrepresentation with the same checklist, yes, no, yes, no, yes, no. Well, they award damages under only two categories for negligent misrepresentation. Those precise categories are also given damages under the CEAA. So even if the negligent misrepresentation class goes totally out the window, the amount of money that was given for the CEAA includes precisely the amount that was given under the negligent misrepresentation claim. So why do we even care about negligent misrepresentation? We care because of due process. We also care because if the CEAA had been itself also properly focused upon, there are items that they've awarded damages under the CEAA that they cannot recover damages on. So for example, under the CEAA, they say that they want to have their contracts with UPI voided, and the statute says you get a return for the amount of money you paid for those services. That would set aside and they would not recover for the contracts with PARs or the amount that they paid PARs. So the analysis, I believe, regarding the negligent misrepresentation subsumed in that award under the CEAA goes part of the way, part of the distance, but it does not go the entire distance. Okay. Why don't we hear from the other side? Thank you, Your Honor. Good afternoon, Your Honors. Henry Liu for the appellees. There are many arguments raised by the appellants on appeal. The foundation of the jury's verdict and the district court's judgment is really not at issue in this appeal. The jury concluded after a six-day trial that the appellants had violated the California Employment Agency Employment Counseling Job Listing Services Act and awarded approximately $4.5 million in damages for those violations. Now here on appeal, the appellants do not challenge the district court's judgment as to the Employment Act violations. They do not challenge the district court's decision to allow an Employment Act claim to proceed on a class-wide basis. And with the exception of their double recovery argument, any challenge to the damages award for the Employment Act violations were waived by virtue of not their failure to raise them below. I'm maybe reading between the lines of the argument I just heard. But with respect to the award of damages under the CEAA against Ms. Navarro, I might have heard, although I'm not quite sure, that some form of altercation or alter ego or something needed to be shown in order to recover damages against her personally. Could you help me out with that? Sure, Your Honor. That's not necessarily true under the Employment Act. The CEAA defines an employment agency as any person, natural or legal, who, for a fee, procures employment services. The evidence in the record shows that Ms. Navarro personally collected fees from class members and directed those fees into her own personal bank account. She is therefore an employment agency under the Act and can be held directly and personally liable for Employment Act violations. What's the relationship between Ms. Navarro and the UPI? Ms. Navarro is the president of UPI and UPI's sole decision maker. There is also evidence in the record suggesting she participated and directed in the activities of UPI. She was present in these meetings in the Philippines. She delivered contracts and organized the process. And so taking the record as a whole, there is evidence indicating that she herself failed to comply with the Employment Act and violated the terms of the statute. This may or may not be legally relevant, but do we have information as to the ownership of UPI? My understanding, Your Honor, is that Ms. Navarro is UPI's sole owner. Your understanding, do you have anything in the record that tells us that? I'm not certain, Your Honor, and it's not certain that it's an argument that the appellants have raised on this appeal. I should note that the appellants largely focused their argument on whether this is an agency or a corporate veil piercing issue. But in our view, it's quite simple. She is an employment agency under the Act and can be held personally liable for violations. Now, even if we were to assume that she's not an employment agency and that this is an agency or an alter ego issue, we do note that the jury instructions were quite clear on this point, and the jury instructions were jointly prepared by the parties and submitted to the district court. The jury instructions at supplemental excerpts of Record 39-42 state that in order to hold Nudris Navarro personally liable for any of her acts or statements made in the scope of her agency for UPI, the plaintiffs must show that Ms. Navarro participated in the wrong or directed it be done. That's a standard jury instruction for agency liability that the appellants and appellees jointly proposed, and under the invited error doctrine, we believe that they have waived any challenge to that instruction. Now, the evidence in the record is more than sufficient to show that both she herself committed violations of the Employment Act, and that she participated and directed the wrongs of UPI. And indeed, it shows that she organized these meetings, she's the one who failed to disclose fee schedules in accordance with the Employment Act, she collected fees without written contracts in violation of the Act, that both her and UPI failed to notify class members of their right to a refund, and that Ms. Navarro divided fees illegally with an attorney agent in violation of the statute. So we think the issue of whether she can be held personally liable for the approximately 4.5 million of damages that the jury awarded for the Employment Act violations is quite clear. There was also another issue raised by appellants as to the damage of this award, the double recovery argument. I'd like to focus on that a little bit and clarify that there has been no double recovery in this case to this point. As to the Louisiana judgment, there has not been a single penny collected by class members, for that proceeding. Now, as to the Department of Labor and the POES, the Philippines Overseas Employment Agency, there is no admissible evidence in this record suggesting that class members collected anything from either of those proceedings. Now, the only question before this Court is whether the District Court's judgment as it stands, whether there's any evidence in the record to suggest the amount of damages awarded should be reduced, and in this record, there is no such evidence. If at some point in the future the appellants do discover evidence where evidence emerges that there is double satisfaction, the appellants will have ample opportunities to raise those issues with the District Court. And indeed, under standard California procedure, an appellant, after a judgment has been issued, may petition the District Court for a partial satisfaction order. And they present evidence to the District Court showing that a partial satisfaction has occurred, and the District Court has the authority to reduce its judgment by a corresponding amount. And there can be discovery and other proceedings within that post-judgment time period where the appellants can present evidence and search for evidence of double recovery. The District Court in this case actually went above and beyond that ordinary procedure by establishing this affidavit procedure. It required, in fact, every class member to execute an affidavit before collecting on the judgment, asserting under oath that the class member has not recovered anything duplicative with the District Court's judgment in this case. Now, one factual issue I'd like to be clear on, on the issue of whether the Department of Labor has refunded all the fees, the record indicates, through two unauthenticated letters, that the two parishes, a small portion of the class members, received certain amount of fees from the school districts, the Caddo Parish and the Jefferson Parish. There is no indication in the record what those fees were, whether they were duplicative with the five categories of fees that the District Court's judgment was based on, and there is no indication why those fees were awarded. So at this point, there is no indication that the District Court's judgment is duplicative with anything. And again, if at some point in the future appellants wish to raise this issue with the District Court, they can. What about the issue of the certification of the negligent misrepresentation claim? Well, Your Honor, I believe Judge Fletcher was correct that the Court need not decide this issue because the negligent misrepresentation claim was subsumed by and duplicative with the Employment Act violations, and here appellants do not challenge the certification of an Employment Act claim, and they do not challenge the jury's findings of Employment Act violations. So even if the negligent misrepresentation claim had never been certified, we believe the result would have been exactly the same. Now, even aside from that issue, if the negligent misrepresentation claim were separate, we do believe that the District Court could have properly certified a negligent misrepresentation claim, hypothetically. This Court has favored class treatment for fraud claims when they proceed from a common course of conduct. I mean, there's a problem that wasn't really mentioned by counsel with respect to the negligent certification of the negligent misrepresentation claim, and that is reliance. The District Court declined to certify the fraud claim on the ground that reliance was going to be necessary, yet seemed to overlook the fact that reliance was necessary for the negligence claim. So if the negligent claim were not entirely subsumed under the CEAA claim, I might have a problem.  Unless, and this goes back both to the TVPA and then to the negligence claim, there's an argument, not very long, it's just about a paragraph, that because of the certification of the TVPA claim, and implicitly, I guess, the negligent claim, some prejudicial evidence comes in. How do you respond? Let me address the prejudice argument first, and then I'll turn back to the negligent misrepresentation claim. On the prejudice argument, I think as an initial matter, we don't think that the certification of a class has any bearing on what evidence may come in. Well, yes, it does, in the sense that if you're trying the class action under the TVPA, and a class action under the negligence, and reliance has to be shown, you're going to introduce reliance evidence, and the evidence that they're objecting to is basically reliance evidence. That's correct, Your Honor. In our view, had certification been denied, the named plaintiffs, in this case, would have had the right to bring the trafficking and negligent misrepresentations claims on an individual basis. And so in our view, the testimony from the named plaintiffs could have been offered in support of an individual claim. Now, separate and apart from that, we think any prejudice argument in this case has been waived, because they failed to address this issue under Rule 42B motion. If the appellants at trial were concerned about the prejudicial effect of multiple claims being tried together, the proper procedure would have been to ask the district court to bifurcate the trials between separate claims. I don't find that very persuasive. Well, Your Honor, if the district judge is convinced, as he appears to have been, that the TVPA claim was properly certified, to ask the district judge to sever that claim from the others on the ground that it's improperly certified, and he needs to have two different trials, good luck with that one. That's correct, Your Honor. We believe that in any scenario, these claims would have been properly tried together. And a motion to sever for separate trials would have been absolutely frivolous. That's correct, Your Honor. So don't argue to me that that's the motion they should have brought. Well, Your Honor, it goes to the issue of prejudice in many ways. It's similar to a situation where a defendant agrees to being tried with another defendant, but then on appeal raises the argument that the evidence introduced on behalf of the other defendant may have prejudiced the trial. We believe that in the ordinary course, the district court would have denied such a motion, and the common core of facts would have been properly brought as a single trial. But we're aware of no authority in which, when a single trial is being brought on multiple claims, that that could unfairly prejudice the jury in some regard. Let me go at it this way. I think I've indicated in the manner in which I've asked the questions, my skepticism of the strength of the argument that absent the improper certification, this evidence would have come in and it shouldn't have come in because it was prejudicial. I'm not convinced about how prejudicial it was, but I'd like to hear you tell me why you think it was not prejudicial. There are two reasons, Your Honor, and first and foremost, when you view the jury verdict as a whole, we don't believe there's any indication of prejudice, first and foremost because the jury actually found in the appellant's favor on the trafficking claim. And moreover, under the Employment Act, the jury had the option of awarding trouble damages, but declined to do so. So when you view the verdict as a whole, we don't believe there's any indication the jury was unduly inflamed as to the Employment Act issues. I noticed that they were asked, is there a multiplier, and if so, what's your number between one and three? And they said no multiplier. What are the criteria under the statute to have a multiplier? In our view, Your Honor, and there is no case law interpreting what is required for the multiplier. The way the statute is written, it suggests that it's a multiplier for punitive damages. And so extrapolating, I think that for the jury to conclude, and indeed the jury was instructed on this particular point, to conclude that a multiplier was permissible or should be applied, the jury had to find additional factors in support of a punitive damages award. And here there was no such determination by the jury. And Your Honor, separate and apart from the jury's verdict, Your Honor mentioned that much of the facts in support of the trafficking claim were the same facts that would have and ultimately could have been offered in support of the CEAA claim. The fact that there was a common scheme to misrepresent the fees that class members were required to pay, the amount of fees that class members ultimately paid, how that affected them, these were all issues that would have been relevant to an Employment Act claim, not only to the violations but ultimately to the damages award. And in particular because since the Employment Act allows for punitive damages, the District Court could have properly allowed all this evidence to come in in support of not only the violations but ultimately what damages the class members suffered. Now, there was also an issue mentioned by appellants about the liability for the fees paid to PARs. And I want to point out as an initial matter, we believe that any challenges to quote-unquote sufficiency of the evidence raised were waived by virtue of them not preserving that through a Rule 50B motion. In this Court, two motions are required to preserve a challenge to a jury's determination of the facts, a Rule 58 motion before the jury renders its verdict and a Rule 50B motion after the jury issues its verdict. And here appellants filed neither of those motions. They did file a Rule 59 motion to amend the judgment after trial, but that motion did not challenge the sufficiency of the evidence to support the jury verdict. Instead, it focused on the question of whether, as a matter of law, the judgment should be reduced because of double recovery. So there was no challenge to the sufficiency of the evidence at trial, and so under this Court's precedent, this Court is barred from reviewing those facts. And that goes both to the finding of liability under the Employment Act and to the ultimate amount of damages that the jury awarded class members. But separate and apart from that, on the issue of whether the fees paid to this Philippines organization can be attributable to the damages award, the Employment Act not only authorizes restitution and disgorgement, but subsection D of 523 also allows for compensatory damages above and beyond restitution. So the jury properly could have concluded in this case that the appellant's conduct caused the damages, which included fees ultimately paid to this Philippines organization. Now separate and apart from that, there was also evidence in the record indicating that PARS was an agent of UPI and Ms. Navarro. In fact, PARS is run by Ms. Navarro's brother. It was expressly contracted to provide recruiting services for UPI. The appellants represented to the Philippines government that PARS was an agent. In fact, the business cards of UPI say that PARS is a branch office. And so looking at the evidence as a whole in the record, there was substantial evidence for the jury to conclude that PARS should be treated as an agent of UPI. Counsel, tell me, how do you think the jury got to the damage award? It's a good question, Your Honor, and if you look at the jury's verdict at 255 and 257, they identified five categories of fees from which the award was premised. Appellant's own records, which we've given to you at supplemental excerpts of record 275, show that when you add up those five categories of fees, you actually get to a number of 5.05 million as opposed to 4.48 million. So in our view, the jury's verdict, in fact, was too low, if anything. Now, thinking about the jury's verdict and how they might have ultimately got to that number, we believe the jury awarded damages for approximately 10,000 per class member for the placement fees, 595 for the credentialing fees, 320 for the visa fees, and 1,000 each for the placement fees and the lawyer's fees. And when you add all those up together and you multiply that by the 347 class members, you actually get the exact number of the award the jury ultimately gave. The interesting thing, though, is when you look at the appellant's own business records, when you actually add up those five categories of fees, you get to a number higher than what the jury assumed through its averaging. I think appellants may raise the issue of improper averaging in the damages award, but, Your Honor, as you noted, that's a standard procedure in a class action like this, and indeed, it's actually an easier situation here because we have, on a class member-by-class member basis, the amount of fees they paid. Those records are excerpted at 232 of the supplemental excerpts of records. So when each and every class member comes to collect on the judgment, he or she will have an exact amount that they will be seeking for the five categories of fees that the jury ultimately awarded. I'm not sure this is relevant to the legal questions in front of us. What happens if, after all of the class members have come forward, and taking into account whatever affidavits they end up filing or don't file, and we pay out to every one of the class members that which they are entitled to individually, we've got a million dollars left? What happens to that money? In that scenario, Your Honor, I'm not sure that's been worked out either by the district court or between the parties. I do know, in this case, given that the five categories of fees actually exceeds the 4.47 million awarded by the jury, we believe if the 347 class members come forward, that the fees will actually exceed the amount that the jury awarded. And so each class member will have to have a corresponding percentage reduction based on... But that was not my question. My question was what happens if there's money left over? And in that scenario, Your Honor, I'm not exactly sure. I think that the class administrator would report on the ultimate number that's remaining from after the class members collect. And I think in that scenario, the district court would have an opportunity to decide whether the funds would go back to the defendants or whether the funds would go to, for example, a... Cypre non-profit or something of that nature. I realize you're pretty much out of time, but I am curious about the 40 percent reduction that the court made to the attorney fee request. And I'm just wondering what sort of support you can give us for what the court did there in terms of your fees. Well, Your Honor, I think the district court started from the principle that when common theories are being brought, even if they're different claims, that attorney's fees should not be separated on a claim-by-claim basis, but instead should be presumed under California law that the worksheet was aggregated and directed at a common set of facts. And so what the district court did was start with that principle, but then decide, look, we will first reduce the fees award by anything expressly and explicitly done for the TVPA claim. We will then take the time entries that presumably go to multiple claims. And under the court's discretion, it believed that an additional 20 percent, above the 20 percent that an appellee's counsel had offered, was appropriate in this case to reflect the fact that the trial may have been shorter, for example, fewer deposition questions may have been asked. But ultimately what the district court started with was the foundation that there were a common set of facts that went across all these claims, and so it presumed that the attorney's fees and the work done was necessary for the ultimate judgment. For those reasons, Your Honor, we believe that this court should affirm the district court's judgment. Okay. Thank you. Thank you. We took you over time, but why don't we give you two minutes? Thank you, Your Honors. Why wasn't a Rule 50B motion made? I know you weren't trial counsel. I mean, these things are automatic, in my experience. Thank you, Your Honor. You know, what I do notice is that before trial was had, you know, we've got these pretrial conferences and we can read the transcripts, and then we've got private, you know, out of the jury, some other transcript hearings, and then we've got post-trial transcript hearings. And what I do notice going on throughout all of this is that these questions regarding the effect of evidence or the effect of the judgment in Louisiana, or whether or not defendants can even be held liable for this kind of thing. And then, you know, the actions of PARs. There was a decision made, it kind of seemed to be a kind of amorphous kind of process that was created, you know, on an ad hoc basis, that this was all going to be dealt with in post-trial briefing. But, I mean, you know that if you're going to challenge the sufficiency of the evidence, you've got to make a motion under Rule 50. I mean, I don't even leave the bench when the plaintiff rests on a case. I get the jury out because I know there's going to be a Rule 50B motion made every time. And I don't know how you, I don't think there can be any challenge to the sufficiency of the evidence here without having made that motion. Thank you, Your Honor. And I realize this is not of your making. Thank you. You know, one aspect that I find particularly troubling, though, is that post-trial there is the decision made, the order that if there's going to be the desire on the plaintiff's part, the class part, to hold defendants liable for the actions of PARs, it needs to be briefed. That's the order. It is not briefed. The Plaintiff Class Counsel does not brief it, so the Defendant's Counsel is left not to brief that. I mean, it seemed as if it was a non-issue, there's not going to be the effort by the Plaintiff's Class to hold the defendants liable for the actions of PARs. I do want to address briefly... Okay, you're over time, so it better be brief. Thank you. Footnote 6 in our brief, opening brief, has many, many examples and citations to the record of a lot of evidence that came in under the trafficking claim that would not have come in. The big issue with the California Deployment Agency Act claim is that it's not a case of, you know, the plaintiff is not liable for the actions of PARs. It's the damages, and we believe that that's not addressed just by saying the reliance on negligent misrepresentation is subsumed. Thank you, Your Honors. Thank you. That completes arguments for this morning. Thank you for your patience, and we are now in adjournment.
judges: W. Fletcher, Gould, Christensen